# UNITED STATES DISTRICT COURT

### for the

### District of Columbia

|  |  |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><small>INFORMATION ASSOCIATED WITH ONE BLACK APPLE IPHONE AND ONE APPLE IPAD PREVIOUSLY RECOVERED BY THE FBI FROM THE OFFICE OF JASON TIPTON, FORT BELVOIR COMMUNITY HOSPITAL, 9300 DEWITT LOOP, FORT BELVOIR, VIRGINIA, AND CURRENTLY LOCATED AT THE U.S. ATTORNEY'S OFFICE, 555 4th ST, NW, WASHINGTON, DC, UNDER RULE 41</small> | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 20-sw-104 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A  incorporated herein and included as part of this Application for a Search Warrant.

located in the _____ District of _____ Columbia _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B incorporated herein and included as part of the attached Affidavit.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §2251; | Sexual exploitation of children, Production of child pornography |
| 18 U.S.C. §2252(a)(2) | Distribution of Child Pornography |

The application is based on these facts:

See Attached Affidavit in Support of Search Warrant.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Alix Skelton, Special Agent, Federal Bureau of Investigation
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means)*.

Date: _____ 04/08/2020 _____

_____
*Judge's signature*

City and state:  Washington, DC

Deborah A. Robinson, U.S. Magistrate Judge
*Printed name and title*

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means

☐ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>INFORMATION ASSOCIATED WITH ONE BLACK APPLE IPHONE AND ONE APPLE IPAD PREVIOUSLY RECOVERED BY THE FBI FROM THE OFFICE OF JASON TIPTON, FORT BELVOIR COMMUNITY HOSPITAL, 9300 DEWITT LOOP, FORT BELVOIR, VIRGINIA, AND CURRENTLY LOCATED AT THE U.S. ATTORNEY'S OFFICE, 555 4th ST, NW, WASHINGTON, DC, UNDER RULE 41 | )<br>)<br>)<br>)<br>)<br>)     Case No.  20-sw-104 |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____Columbia_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A incorporated herein and included as part of this Application for a Search Warrant.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B incorporated herein and included as part of the attached Affidavit.

**YOU ARE COMMANDED** to execute this warrant on or before _____April 22 , 2020_____   *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Deborah A. Robinson_____.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   _____04/08/2020_____

City and state:      _____Washington, DC_____      _____Deborah A. Robinson, U.S. Magistrate Judge_____
                                                        *Judge's signature*

                                                                        *Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>  20-sw-104 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

| **Certification** |
|---|

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: BLACK APPLE iPHONE AND APPLE iPAD PREVIOUSLY RECOVERED BY THE FBI FROM THE OFFICE OF JASON TIPTON, FORT BELVOIR COMMUNITY HOSPITAL, 9300 DEWITT LOOP, FORT BELVOIR, VIRGINIA, AND CURRENTLY LOCATED AT THE UNITED STATES ATTORNEY'S OFFICE, 555 4th ST, NW, WASHINGTON, DC | SW No. 20-sw-104 |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Alix Skelton, a Special Agent with the Federal Bureau of Investigation (FBI),

Washington Field Office, Washington, D.C., being duly sworn, depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI"), duly

appointed according to law and acting as such. I have been so employed by the FBI since 2011.

Currently, I am assigned to the Washington Field Office ("WFO"), where I am responsible for

conducting and assisting in investigations involving child pornography, the sexual exploitation of

children, and human trafficking. I have gained experience through training with the FBI and in

your affiant's everyday work related to conducting these types of investigations. During your

affiant's career as an FBI agent, I have (a) conducted physical and wire surveillance; (b) led and

participated in the execution of search warrants and arrest warrants for various crimes; (c)

reviewed and analyzed numerous recorded conversations and other documentation of criminal

activity; (d) debriefed cooperating defendants and confidential human sources; (e) monitored

wiretapped conversations; and (f) conducted physical surveillance of individuals engaged in

various crimes. Moreover, I am a federal law enforcement officer who is engaged in enforcing the criminal laws, including child pornography offenses in violation of Title 18, United States Code, Sections 2251 and 2252, and 2252A. As a Federal Agent, I am authorized to investigate violations of United States laws and to execute warrants issued under the authority of the United States.

2.      This affidavit is made in support of an application for a search warrant under Rule 41 of the Federal Rules of Criminal Procedure to search the following: 1) Apple iPhone;[1] and 2) Apple iPad, model A2197 and bearing serial number F9FZGSPAMF3M (collectively THE DEVICES). Each item to be searched is described further in the Attachment A appended to the search warrant application. Likewise, the things to be searched for are described further in the Attachment B appended to the search warrant application.

3.      I am familiar with the information contained in this Affidavit based upon the investigation I have conducted, which includes conversations with law enforcement officers and others, and review of reports and database records.

4.      Because I submit this Affidavit for the limited purpose of securing a search warrant, I have not included each and every fact known to me or the government. I have included only those facts necessary to establish probable cause to believe that evidence of violations of Title 18, United States Code, Sections 2251(a) and 2252(a)(2) is located on the subject devices.

---

[1] As detailed below, this iPhone was recovered from David Jason Tipton's desk.  It has a black, plastic protective covering on it.  No other identifiers are available at this time.  The model and serial number are not printed on the exterior of the device, and would require hooking the iPhone up to a Cellebrite tool to determine.

2

## **STATUTORY AUTHORITY**

5.      Title 18, United States Code, Section 2251(a) prohibits employing, using, persuading, inducing, enticing, or coercing any minor to engage in, or having a minor assist any other person to engage in, or transporting any minor in or affecting interstate or foreign commerce with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed; or if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer; or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed; or attempting or conspiring to do so.

6.      Title 18, United States Code, Section 2252(a)(2) prohibits the knowing receipt or distribution of any visual depiction of minors engaging in sexually explicit conduct that has been mailed or shipped or transported in or affecting interstate or foreign commerce, by any means, including by computer.

7.      Title 18, United States Code, Section 2256(1) defines "minor" as any person under the age of eighteen years.

8.      Title 18, United States Code, Section 2256(8) defines "Child Pornography" in relevant part as "any visual depiction, including any photograph, film, video, picture, or computer

3

or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where – (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct."

9.      Title 18, United States Code, Section 2256(2) defines "sexually explicit conduct" as actual or simulated: (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person.

## DEFINITIONS

10.      Based on your affiant's training and experience, and information acquired from other law enforcement officials with technical expertise, your affiant knows the terms described below have the following meanings or characteristics:

a.      "Cache" means the text, image, and graphic files sent to and temporarily stored by a user's computer from a website accessed by the user in order to allow the user speedier access to and interaction with that website.

b.      "Child erotica," as used in this application, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not, in and of themselves, obscene or that do not necessarily depict minors engaging in sexually explicit conduct.

c.      "Computer," as defined in 18 U.S.C. § 1030(e)(1), means "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing

logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device."

d.      "Computer hardware," as used in this application, means all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including, but not limited to, keyboards, printers, video display monitors, modems, routers, scanners and related communications devices such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

e.      "Internet Protocol address" or "IP address," as used in this application, is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers separated by periods (e.g., 121.56.97.178) or a series of eight blocks separated by colons (e.g., 2001:0db8:0000:0042:0000:8a2e:0370:7334). Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses. ISPs typically maintain logs of the subscribers to whom IP addresses are assigned on particular dates and times.

## COMPUTERS AND CHILD PORNOGRAPHY

11.     Based upon your affiant's training and experience as well as your affiant's discussions with others involved in child pornography investigations, computers and computer technology have revolutionized the way in which child pornography is produced, distributed, received and possessed:

     a.     Child pornographers can save images from a digital device's built in camera or transfer photographs to a computer directly from a digital camera or smartphone camera. A computer's electronic storage media (commonly referred to as the hard drive) can store tens of thousands of images at a very high resolution. In addition, magnetic storage located in host computers make it possible to use a video camera to capture an image, process that image in a computer with a video capture board, and save that image in another country. Once done, there is no readily apparent evidence at the "scene of the crime." Only careful laboratory examination of electronic storage devices can recreate the evidence trail.

     b.     The Internet provides child pornographers relatively secure and anonymous ways to obtain, view, and trade child pornography. Users can find individuals with similar interests or child pornography websites. Collectors and distributors of child pornography can set up an account with a remote computing service that provides e-mail services and electronic file storage. Evidence of such online storage of child pornography may be found on the user's digital devices, including smartphones and tablets.

## CHARACTERISTICS OF INDIVIDUALS WITH A SEXUAL INTEREST IN CHILDREN AND/OR CHILD PORNOGRAPHY

12.     Information set forth elsewhere in this Affidavit—which indicates that TIPTON, while at 9283 Potomac Loop, Fort Belvoir, Virginia, discussed sexually abusing children and distributed images of child sexual abuse—suggests that this person has a sexual interest in children or in sexually explicit images and videos of children. Your affiant's knowledge of these types of individuals and their characteristics is based on your affiant's experience as an FBI agent, the training your affiant has received at FBI in-service schools, and training conferences focused on crimes against children. Based upon such training and experience, as well as upon information provided to me by other law enforcement officers, your affiant is aware of the following general characteristics, which may be exhibited in varying combinations:

a.     Individuals who have a sexual interest in children or images of children may receive sexual gratification, stimulation, and satisfaction from contact with children, from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses (such as in person, in photographs, or other visual media), or from literature describing such activity.

b.     Such individuals may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Such individuals oftentimes use these materials for their own sexual arousal and gratification. They may also use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

7

c.      These child pornographic material is usually maintained in the privacy and security of their home or some other secure location. Such individuals typically retain child pornographic material for many years.

d.      Likewise, such individuals often maintain their collections that are in a digital or electronic format in a safe, secure, and private environment, such as a computer or mobile computing devices, including smartphones and tablets.  These collections are often maintained for several years and are kept close by, usually at the individual's residence, or on the individual's person, to enable the individual to view the collection, at any time.

e.      Due to the accessibility and availability of child pornography on the Internet, in your affiant's recent experience, instead of maintaining collections, some such individuals engage in a pattern of viewing or downloading child pornography online and then deleting the material. This conduct also usually occurs at the individual's residence or some other secure location. It is also not uncommon for offenders to commit child pornography violations using only mobile computing devices, such as smart phones and tablets.

f.      Such individuals also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography. Such items are commonly found on these individuals mobile computing devices.

8

g.      Such individuals prefer not to be without access to child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

## INVESTIGATION AND IDENTIFICATION OF TIPTON

13.      On Monday March 9, 2019, an FBI WFO task force officer was acting in an undercover capacity (the "UC") as part of the Metropolitan Police Department-Federal Bureau of Investigation ("MPD-FBI") Child Exploitation Task Force, operating out of a satellite office in Washington, D.C. In that capacity, the UC posted numerous online bulletin messages on a specific social media forum[2] known to the UC as a website where users meet to discuss and trade child pornography and child erotica, among other things. This site is forum-based and offers users an internal email through which they can communicate with other users. Users can start a conversation thread and title the topic for all users to view. Users can respond to the thread for all users to see.

14.      Leading up to March 9, 2020 the UC commented on various posts that were started by other users. The UC indicated the he was a 33 year-old father with a daughter. On March 9, 2020, the UC posted an advertisement stating that he was a father in the Washington, DC/Virginia area looking to contact other dads close by who were into, *inter alia*, family,

---

[2] The true name of this forum/website is known to law enforcement. It is being anonymized to protect ongoing investigations.

daughter, and young sister things, making clear it was a sexual interest. The UC left his Kik

screen name in each post that he commented on or posted.[3]

15.     On Monday, March 9, 2020, an individual using the Kik name "tiptjd" with a

display name of "JT," later identified as JASON DAVID TIPTON (herein "TIPTON"), sent a

private Kik message to the UC stating, "Im in VA." TIPTON stated that he was a 35 year-old

father with a 6 year-old daughter. The following is a portion of the text exchange:

| |
|---|
| UC: What all u get into |
| TIPTON: You tell me |
| UC: I'm taboo no limits |
| UC: Where u find me |
| TIPTON: [referred to the specific social media forum/website noted above] |
| UC: Cool, you spy on your girl and play? |
| TIPTON: A lot you? |
| UC: Yes mostly when she is asleep |
| UC: What about u |
| TIPTON: Can I see |

---

[3] Kik is an instant messaging mobile application where one can transmit and receive messages, photos, and videos. Users can communicate privately with other users or in groups.

| |
|---|
| UC: Yeah |
| UC: What do you have of yours |
| TIPTON: A lot |
| UC: Ok is she home now? |
| TIPTON: Nope. You |
| UC: Not right now. Can you hold up 3 fingers on front of her panties so I know your real |
| UC: [Sends an image of himself holding up 3 fingers near a pair of children's underwear] |
| TIPTON: [Sends an image of himself holding up 3 fingers in front of a pair of children's Super Man underwear] |

16.     During the course of the chat, the UC sent TIPTON a clothed image of his purported daughter.[4] The image depicted the side of the purported child's head and shoulder area. TIPTON responded, "Show skin". TIPTON sent the UC an image of a prepubescent child sitting with her legs crossed. The child's face was not visible, but she is wearing a black shirt with a roller skate design on the front of the shirt. Pieces of a puzzle can be seen next to the child's leg. During the course of the chat, TIPTON asked the UC about his experience with his daughter. The following is a portion of that chat exchange:

_____

[4] The images the UC sent to TIPTON did not depict a real child.

11

| |
|---|
| TIPTON: What all have you done |
| UC: Touch her when she is asleep and jerk on her stuff like that |
| UC: What about u |
| TIPTON: Same. And give baths and wash it all |
| UC: Nice! |
| TIPTON: It is |
| TIPTON: Well |
| UC: Waiting for you |
| UC: I sent first last time |
| TIPTON: [Sends a grainy image of what appears to be a prepubescent girl wearing a white T Shirt and a pink bottom.] |

17.     After sending this image, TIPTON again asked the UC to send an image "showing skin." The UC did not send any additional images to TIPTON, who was still using the screen name "tiptjd."

18.     On March 9, 2020 the UC recorded the chat logs and learned that shortly after this chat session TIPTON's Kik account was shut down, it is unknown whether this account was shut down by TIPTON or Kik.

19.     On March 12, 2020, the UC received a message from an individual using the Kik screen name "tiptjd1" with a display name of "J T" later identified as TIPTON. "Tiptjd1" sent

12

the UC a private KIK message stating, "Hey." The UC responded, "Hey ASL," (a slang

abbreviation meaning age, sex, location). On March 13, 2020, TIPTON responded, "I'm in dc.

You?" During the course of the chat TIPTON stated that he was 31 years of age residing in

Alexandria, Virginia with a 7 year-old daughter. The following is a portion of the chat exchange

as it relates to TIPTON's daughter:

| |
|---|
| TIPTON: Got some reveal pics? |
| UC: I have a few? |
| UC: Is yours with you now? |
| TIPTON: I have pics. She isn't here |
| UC: Ok cool, I can verify that mine are original. Are you home too |
| UC: [Sends an image of his purported daughter lying on a pillow. The photo depicts the purported child's neck area. The UC followed up by sending a live image pointing a finger near the same pillow.] |
| UC: Here is a live of same pillow she on |
| TIPTON: That ain't revealing lol |
| UC: I have them I just want to know that yours are original and not something from the net lol. |
| UC: Do you have a way of proving |
| TIPTON: What do you want? |
| UC: What u have |
| UC: Any way that u can show original |
| UC: U leave |

13

20.     TIPTON then sent the UC two images. The first image depicts what appears to be a prepubescent child lying on top of a character bed sheet. Her face was not exposed and the child was wearing a black T shirt. The second image depicted an individual pointing a finger near the same bed sheet described above.

21.     The UC then sent an image of the chest area of his purported child (as noted above, not a real person). TIPTON stated, "Ever lick it."

22.     TIPTON sent an image of the stomach and chest region of a prepubescent child. The child's face was not visible, but the photo depicted the child's bare breast.

23.     The UC sent an image of his purported daughter. The image depicted the child's stomach and underwear region. TIPTON responded, "Show her pussy." Later in the chat, TIPTON stated, "I got a pussy pic do you." TIPTON sent the UC an image depicting a male pulling a prepubescent child's underpants to the side and pressing his penis against her unclothed genitalia. The picture focused on the child's genitalia and did not depict her face. The underwear were white in color with orange trim. TIPTON had no more contact with the UC after sending this image. TIPTON'S Kik account was shut down. It is unknown whether this account was shut down by TIPTON or Kik.

24.     Administrative subpoenas were served on Kik c/o MediaLab requesting subscriber identification and IP access logs associated with usernames tiptjd and tiptjd1. For the account tiptjd, Kik's response provided a display name of "J t", a confirmed email address of tiptjd@gmail.com, a device description of an iPhone, and IP logs spanning March 8 through 9, 2020. For the account tiptjd1, Kik's response provided a display name of "J T", an unconfirmed email address of tiptjd4886@gmail.com, a device description of an iPhone, and IP logs spanning

March 12 through 13, 2020. Examination of the logs for both accounts yielded a single Verizon FIOS IP address (71.191.74.71) used to access the target accounts.

25.     Upon receipt of this information, FBI Washington Field Office used available open source, commercial (*e.g.*, Accurint), and law enforcement sensitive (*e.g.*, NCIC, Department of Motor Vehicles) databases to fully identify the suspected user of Kik account tiptjd1 as Jason David Tipton of 9283 Potomac Loop, Fort Belvoir Virginia 22060. TIPTON has no identifiable criminal history. U.S. Army Criminal Investigation Division ("CID") at Fort Belvoir confirmed that TIPTON's address of record is 9283 Potomac Loop, Fort Belvoir Virginia.

26.     A social networking profile (www.facebook.com/jason.tipton.90) was identified as belonging to TIPTON. Review of publicly available photographs on this profile yielded multiple images depicting an individual in military fatigues and visually matching TIPTON's Kentucky driver's license photograph. Additionally, there were publicly available photographs of TIPTON with a prepubescent female who appears to be of similar age and build as the child depicted in the images sent by TIPTON in the chats.

27.     On March 30, 2020, your affiant conducted surveillance on the 9283 Potomac Loop, Fort Belvoir Virginia. Your affiant observed a grey Chevrolet SUV, bearing Virginia license plate USM-8111 in the driveway of the residence. This vehicle is registered to JASON and SARA TIPTON, who reside at 9283 Potomac Loop, Fort Belvoir Virginia.

28.     On April 1, 2020, the Hon. Theresa Buchanan, United States Magistrate Judge for the Eastern District of Virginia, at Alexandria, authorized a search warrant for the residence at 9283 Potomac Loop, Ft. Belvoir, Virginia and the person of JASON TIPTON. Also on April 1, 2020, this Court authorized an arrest warrant based on a criminal complaint for JASON

15

TIPTON, charging him with one count of Distribution of Child Pornography in violation of Title 18 United States Code, Section 2252(a)(2). Both the search warrants and arrest warrant were executed by Agents and Task Force Officers of the FBI and Army CID on April 2, 2020.

29.     During the execution of the search warrant at 9283 Potomac Loop, Fort Belvoir Virginia, items of clothing and bedding belonging to TIPTON's six year old daughter were located and seized. TIPTON's wife was also interviewed by Agents during the search warrant and she confirmed that the female child depicted in several of the nonpornographic images distributed by TIPTON to the UC was their six year old daughter.

30.     TIPTON was arrested by your affiant and other law enforcement officers in the hallway immediately outside his office, located at Fort Belvoir Community Hospital, 9300 DeWitt Loop, Fort Belvoir, Virginia. At the time of arrest, TIPTON advised your affiant that his cellphone, an iPhone, and his iPad were on his desk inside his office. Your affiant did observe an iPhone and an iPad in plain view on top of TIPTON's desk inside his office through the open office door.  Both the iPhone and the iPad were seized at that time.

31.     Subsequent to his arrest, TIPTON was advised of his rights pursuant to *Miranda* and voluntarily agreed to waive those rights and be interviewed by your affiant and an FBI Task Force Officer. During his interview, TIPTON admitted to using the Kik accounts "tiptjd" and "tiptjd1" to communicate with multiple individuals regarding the sexual abuse of children and to receive and distribute child pornography.

32.     TIPTON specifically advised that the Kik application had been installed on his iPhone and that he had used that device to communicate via the application, however he had deleted his accounts because he "knew it was wrong." TIPTON also admitted to using the social media site referenced above in paragraph 13.

16

33.     Since the time of their seizure by the FBI, the DEVICES have been maintained in

a manner consistent with the FBI's policies for handling electronic evidence in order to preserve

the contents of the DEVICES in the format in which they existed at the time the DEVICES were

seized. Specifically, on April 6, 2020 the custody of the DEVICES was transferred from the FBI

to the United States Attorney's Office forensic examiner, located at the United States Attorney's

Office, 555 4th St NW, Washington, DC, 20535. This transfer was completed pursuant to policy,

the chain of custody has been maintained, and the contents of the DEVICES remain in the format

in which they existed at the time the DEVICES were seized.

34.     In her training and experience, your affiant is aware that multiple Apple devices

owned by the same individual are often linked via the same Apple iCloud account and that data

or activity from one account is often visible on the other devices, even after it may be deleted

from the primary device.

## COMPUTERS, ELECTRONIC/MAGNETIC STORAGE, AND FORENSIC ANALYSIS

35.     As described above and in Attachment B, this application seeks permission to

search for evidence, fruits, contraband, instrumentalities, and information that might be found

within the DEVICES, in whatever form they are found.  Based on your affiant's knowledge,

training, and experience, as well as information related to your affiant by agents and others

involved in this investigation and in the forensic examination of digital devices, your affiant

respectfully submits that there is probable cause to believe that the records and information

described in Attachment B will be stored in the DEVICES for at least the following reasons:

36.     Individuals who engage in criminal activity, including violations of 18 United States Code, Sections 2251(a), 2252 and 2252A use digital devices, like the DEVICES, to access websites to facilitate illegal activity and to communicate with victims, witnesses, and co-conspirators online; to store on digital devices, like the DEVICES, documents, photographs, recordings, messages, and other records relating to their illegal activity, which can include logs of online chats; email correspondence and correspondence through other applications; text or other "Short Message Service" ("SMS") messages; contact information of victims, witnesses, and other co-conspirators, including telephone numbers, email addresses, identifiers for instant messaging and social medial accounts; names, addresses, telephone numbers, and social security numbers of other individuals; records of internet searches and Web History browsers; IP addresses; and other means used in furtherance of these crimes as stated above, incorporated by reference here.

37.     Individuals who engage in the foregoing criminal activity, in the event that they change digital devices, will often "back up" or transfer files from their old digital devices to that of their new digital devices, so as not to lose data, including that described in the foregoing paragraph, which would be valuable in facilitating their criminal activity.

38.     Digital device files, or remnants of such files, can be recovered months or even many years after they have been downloaded onto the medium or device, deleted, or viewed via the Internet.  Electronic files downloaded to a digital device can be stored for years at little or no cost.  Even when such files have been deleted, they can be recovered months or years later using readily-available forensics tools.  When a person "deletes" a file on a digital device such as a home computer, a smart phone, or a memory card, the data contained in the file does not actually disappear; rather, that data remains on the storage medium and within the device unless and until

18

it is overwritten by new data.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space – that is, in space on the digital device that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space – for long periods of time before they are overwritten.  In addition, a digital device's operating system may also keep a record of deleted data in a "swap" or "recovery" file.  Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or "cache."  The browser typically maintains a fixed amount of electronic storage medium space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages.  Thus, the ability to retrieve "residue" of an electronic file from a digital device depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer, smart phone, or other digital device habits.

39.     As further described in Attachment B, this application seeks permission to locate not only electronic evidence or information that might serve as direct evidence of the crimes described in this affidavit, but also for forensic electronic evidence or information that establishes how the digital device(s) were used, the purpose of their use, who used them (or did not), and when.  Based on your affiant's knowledge, training, and experience, as well as information related to your affiant by agents and others involved in this investigation and in the forensic examination of digital devices, your affiant respectfully submit there is probable cause to believe that this forensic electronic evidence and information will be in the DEVICES because:

a.   Although some of the records called for by this warrant might be found in the form of user-generated documents or records (such as word processing, picture, movie, or texting files), digital devices can contain other forms of electronic

19

evidence as well.  In particular, records of how a digital device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials contained on the digital device(s) are, as described further in the attachments, called for by this warrant.  Those records will not always be found in digital data that is neatly segregable from the hard drive, flash drive, memory card, or other electronic storage media image as a whole.  Digital data stored in the Device(s), not currently associated with any file, can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave digital data on a hard drive that show what tasks and processes on a digital device were recently used.  Web browsers, e-mail programs, and chat programs often store configuration data on a hard drive, flash drive, memory card, or memory chip that can reveal information such as online nicknames and passwords.  Operating systems can record additional data, such as the attachment of peripherals, the attachment of USB flash storage devices, and the times a computer, smart phone, or other digital device was in use. Computer, smart phone, and other digital device file systems can record data about the dates files were created and the sequence in which they were created. This data can be evidence of a crime, indicate the identity of the user of the digital device, or point toward the existence of evidence in other locations.  Recovery of this data requires specialized tools and a controlled laboratory environment, and also can require substantial time.

20

b.   Forensic evidence on a digital device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, registry information, configuration files, user profiles, e-mail, e-mail address books, chats, instant messaging logs, photographs, the presence or absence of malware, and correspondence (and the data associated with the foregoing, such as file creation and last-accessed dates) may be evidence of who used or controlled the digital device at a relevant time, and potentially who did not.

c.   A person with appropriate familiarity with how a digital device works can, after examining this forensic evidence in its proper context, draw conclusions about how such digital devices were used, the purpose of their use, who used them, and when.

d.   The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a digital device that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, digital device evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on digital devices is evidence may depend on other information stored on the devices and the application of knowledge about how the devices behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.   Further, in finding evidence of how a digital device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on the device. For example, the presence or absence of counter-forensic programs, anti-virus programs (and associated data), and malware may be relevant to establishing the user's intent and the identity of the user.

f.   Your affiant knows that when an individual uses a digital device to coerce another individual into engaging in sexual activity, the individual's device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The digital device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The digital device is also likely to be a storage medium for evidence of crime. From your affiant's training and experience, your affiant believes that a digital device used to commit a crime of this type may contain data that is evidence of how the digital device was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense and the identities of those perpetrating it.

## METHODS TO BE USED TO SEARCH DIGITAL DEVICES

40.     Based on your affiant's knowledge, training, and experience, as well as information related to your affiant by agents and others involved in this investigation and in the forensic examination of digital devices, your affiant knows that:

a.  Searching digital devices can be an extremely technical process, often requiring specific expertise, specialized equipment, and substantial amounts of time, in part because there are so many types of digital devices and software programs in use today.  Digital devices – whether, for example, desktop computers, mobile devices, or portable storage devices – may be customized with a vast array of software applications, each generating a particular form of information or records and each often requiring unique forensic tools, techniques, and expertise.  As a result, it may be necessary to consult with specially trained personnel who have specific expertise in the types of digital devices, operating systems, or software applications that are being searched, and to obtain specialized hardware and software solutions to meet the needs of a particular forensic analysis.

b.  Digital data is particularly vulnerable to inadvertent or intentional modification or destruction.  Searching digital devices can require the use of precise, scientific procedures that are designed to maintain the integrity of digital data and to recover "hidden," erased, compressed, encrypted, or password-protected data.  Recovery of "residue" of electronic files from digital devices also requires specialized tools and often substantial time.  As a result, a controlled environment, such as a law enforcement laboratory or similar facility, is often

23

essential to conducting a complete and accurate analysis of data stored on digital devices.

c.   Further, as discussed above, evidence of how a digital device has been used, the purposes for which it has been used, and who has used it, may be reflected in the absence of particular data on a digital device.  For example, to rebut a claim that the owner of a digital device was not responsible for a particular use because the device was being controlled remotely by malicious software, it may be necessary to show that malicious software that allows someone else to control the digital device remotely is not present on the digital device.  Evidence of the absence of particular data or software on a digital device is not segregable from the digital device itself.  Analysis of the digital device as a whole to demonstrate the absence of particular data or software requires specialized tools and a controlled laboratory environment, and can require substantial time.

d.   Digital device users can attempt to conceal data within digital devices through a number of methods, including the use of innocuous or misleading filenames and extensions.  For example, files with the extension ".jpg" often are image files; however, a user can easily change the extension to ".txt" to conceal the image and make it appear that the file contains text.  Digital device users can also attempt to conceal data by using encryption, which means that a password or device, such as a "dongle" or "keycard," is necessary to decrypt the data into readable form. Digital device users may encode communications or files, including substituting innocuous terms for incriminating terms or deliberately misspelling words, thereby thwarting "keyword" search techniques and necessitating continuous

24

modification of keyword terms.  Moreover, certain file formats, like portable document format ("PDF"), do not lend themselves to keyword searches.  Some applications for computers, smart phones, and other digital devices, do not store data as searchable text; rather, the data is saved in a proprietary non-text format. Documents printed by a computer, even if the document was never saved to the hard drive, are recoverable by forensic examiners but not discoverable by keyword searches because the printed document is stored by the computer as a graphic image and not as text.  In addition, digital device users can conceal data within another seemingly unrelated and innocuous file in a process called "steganography."  For example, by using steganography a digital device user can conceal text in an image file that cannot be viewed when the image file is opened. Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed.  A substantial amount of time is necessary to extract and sort through data that is concealed, encrypted, or subject to booby traps, to determine whether it is evidence, contraband or instrumentalities of a crime.

e.  Analyzing the contents of mobile devices, including tablets, can be very labor intensive and also requires special technical skills, equipment, and software.  The large, and ever increasing, number and variety of available mobile device applications generate unique forms of data, in different formats, and user information, all of which present formidable and sometimes novel forensic challenges to investigators that cannot be anticipated before examination of the device.  Additionally, most smart phones and other mobile devices require

25

passwords for access. For example, even older iPhone 4 models, running IOS 7, deployed a type of sophisticated encryption known as "AES-256 encryption" to secure and encrypt the operating system and application data, which could only be bypassed with a numeric passcode. Newer cell phones employ equally sophisticated encryption along with alpha-numeric passcodes, rendering most smart phones inaccessible without highly sophisticated forensic tools and techniques, or assistance from the phone manufacturer. Mobile devices used by individuals engaged in criminal activity are often further protected and encrypted by one or more third party applications, of which there are many. For example, one such mobile application, "Hide It Pro," disguises itself as an audio application, allows users to hide pictures and documents, and offers the same sophisticated AES-256 encryption for all data stored within the database in the mobile device.

f.   Based on all of the foregoing, your affiant respectfully submits that searching any digital device for the information, records, or evidence pursuant to this warrant may require a wide array of electronic data analysis techniques and may take weeks or months to complete. Any pre-defined search protocol would only inevitably result in over- or under-inclusive searches, and misdirected time and effort, as forensic examiners encounter technological and user-created challenges, content, and software applications that cannot be anticipated in advance of the forensic examination of the devices. In light of these difficulties, your affiant requests permission to use whatever data analysis techniques reasonably appear to

26

be necessary to locate and retrieve digital information, records, or evidence within the scope of this warrant.

41.    In searching for information, records, or evidence, further described in Attachment B, law enforcement personnel executing this search warrant will employ the following procedures:

a.   The digital devices, and/or any digital images thereof created by law enforcement, sometimes with the aid of a technical expert, in an appropriate setting, in aid of the examination and review, will be examined and reviewed in order to extract and seize the information, records, or evidence described in Attachment B.

b.   The analysis of the contents of the digital devices may entail any or all of various forensic techniques as circumstances warrant.  Such techniques may include, but shall not be limited to, surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer believed to contain pertinent files); conducting a file-by-file review by "opening," reviewing, or reading the images or first few "pages" of such files in order to determine their precise contents; "scanning" storage areas to discover and possibly recover recently deleted data; scanning storage areas for deliberately hidden files; and performing electronic "keyword" searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are related to the subject matter of the investigation.

c.   In searching the digital devices, the forensic examiners may examine as much of the contents of the digital devices as deemed necessary to make a determination

27

as to whether the contents fall within the items to be seized as set forth in Attachment B.  In addition, the forensic examiners may search for and attempt to recover "deleted," "hidden," or encrypted data to determine whether the contents fall within the items to be seized as described in Attachment B.  Any search techniques or protocols used in searching the contents of the Device(s) will be specifically chosen to identify the specific items to be seized under this warrant.

## AUTHORIZATION TO SEARCH AT ANY TIME OF THE DAY OR NIGHT

42.     Because forensic examiners will be conducting their search of the digital devices in a law enforcement setting over a potentially prolonged period of time, your affiant respectfully submits that good cause has been shown, and therefore request authority, to conduct the search at any time of the day or night.

## CONCLUSION

43.     Based on the above information, there is probable cause to believe that evidence, fruits, or instrumentalities of violations of Title 18, United States Code, Sections 2251(a)(production of child pornography) and 2252(a)(2) (distribution and receipt of child pornography) are located within the DEVICES.

//

//

//

28

Based upon the foregoing, your affiant respectfully requests that this Court issue a search

warrant for the DEVICES, more particularly described in Attachment A, authorizing the seizure

of the items described in Attachment B.

Respectfully submitted,

Alik Skelton, Special Agent
Federal Bureau of Investigation

Subscribed and sworn telephonically pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) this 8th day of
April, 2020:

THE HONORABLE DEBORAH A. ROBINSON
UNITED STATES MAGISTRATE JUDGE

29

## ATTACHMENT A

*Property to be searched*

The items to be searched are:

- Apple iPhone

- Apple iPad, model A2197 and bearing serial number F9FZGSPAMF3M

previously recovered by the FBI from the office of JASON TIPTON, Ft. Belvoir Community Hospital, 9300 DeWitt Loop, Fort Belvoir, Virginia and currently located at the United States Attorney's Office, 555 4th St., NW, Washington, DC.

30

## ATTACHMENT B

*Property to be seized*

1.      The items, information, and data to be seized are fruits, evidence, information, contraband, or instrumentalities, in whatever form and however stored, relating to violations of Title 18, United States Code, Sections 2251(a) and 2252(a)(2), as described in the search warrant affidavit, including, but not limited to:

*2.*      All records and information relating to violations of Title 18, United States Code, Sections 2251(a) and 2252(a)(2), including:

a.      Child pornography;

b.      Child erotica;

c.      Visual depictions of minors engaged in sexually explicit conduct;

d.      Information,[5] correspondence, records, documents or other materials constituting evidence of or pertaining to items "a" through "c" above (namely child pornography, child erotica, and visual depictions of minors engaged in sexually explicit conduct), or constituting evidence of or pertaining to the possession, transportation, receipt, distribution, or transmission through interstate or foreign commerce of items "a"

---

[5] As used in this attachment, the terms "information" and "records" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

31

and "c" above, or constituting evidence of or pertaining to an interest in child

pornography or sexual activity with children, including:

1. Correspondence or communications, such as electronic mail, chat logs, and

   electronic messages;

2. Internet usage records, user names, logins, passwords, e-mail addresses and

   identities assumed for the purposes of communication on the Internet, billing,

   account, and subscriber records, chat room logs, chat records, membership in

   online groups, clubs or services, connections to online or remote computer

   storage, and electronic files;

3. Diaries, address books, names, and lists of names and addresses of individuals

   who may have been contacted by the computer and internet websites;

4. Shared images, "friends lists," and "thumbnails"; and

5. Financial records, including credit card information.

e.    evidence of who used, owned, or controlled the DEVICE at the time the things

      described in this warrant were created, edited, or deleted, such as logs, registry

      entries, configuration files, saved usernames and passwords, documents, browsing

      history, user profiles, email, email contacts, "chat," instant messaging logs,

      photographs, and correspondence;

f.    evidence of software that would allow others to control the DEVICE, such as

      viruses, Trojan horses, and other forms of malicious software, as well as evidence

      of the presence or absence of security software designed to detect malicious

      software;

g.    evidence of the lack of such malicious software;

32

h.     evidence indicating how and when the DEVICE was accessed or used to determine the chronological context of DEVICE access, use, and events relating to crime under investigation and to the DEVICE user;

i.     evidence indicating the DEVICE user's state of mind as it relates to the crime under investigation;

j.     evidence of the attachment to the DEVICE of other storage devices or similar containers for electronic evidence;

k.     evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the DEVICE;

l.     evidence of the times the DEVICE was used;

m.     passwords, encryption keys, and other access devices that may be necessary to access the DEVICE;

n.     documentation and manuals that may be necessary to access the DEVICE or to conduct a forensic examination of the DEVICE;

o.     records of or information about Internet Protocol addresses used by the DEVICE;

p.     records of or information about the DEVICE's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

q.     contextual information necessary to understand the evidence described in this attachment.

33